[Civil No. 4136. Filed March 25, 1940.]

[100 Pac. (2d) 587.]

MARICOPA COUNTY, STATE OF ARIZONA, Appellant, v. ARIZONA CITRUS LAND COMPANY, a Corporation, Appellee.

Mr. Richard F. Harless, County Attorney of Maricopa County, and Mr. Leslie C. Hardy, Deputy County Attorney of Maricopa County.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellee.

LOCKWOOD, J.—Arizona Citrus Land Company, a corporation, hereinafter called plaintiff, brought suit against the County of Maricopa, hereinafter called defendant, to recover from it certain taxes paid by plaintiff to defendant. The complaint alleges that plaintiff is and at all times mentioned therein was the owner of certain real estate in Maricopa county, and that plaintiff had paid all taxes assessed against such land for the years 1934 to 1938, except the last half of the

taxes for the year 1938. Through a mutual mistake of fact of plaintiff and defendant there was assessed as improvements on said real estate certain improvements which, as a matter of fact, were situated on adjoining land owned by other persons, and by reason of such mistake plaintiff also paid the taxes assessed on the improvements for the years 1934 to 1938, inclusive, except the last half of 1938. The prayer was for the recovery of the amount of taxes thus paid on the improvements in question, together with interest.

The defendant demurred to the complaint, and answered with a general denial. The matter was presented to the court and the demurrer ordered overruled, and defendant electing to stand on its demurrer, judgment was entered for plaintiff, whereupon this appeal was taken.

■■ The demurrer admits the truth of the facts stated in the complaint so the sole question for us is whether money paid voluntarily, as alleged, may be recovered by a taxpayer. It is agreed by both parties that the general rule of common law is, and always has been, that taxes voluntarily paid without protest, and not under duress, cannot be recovered by the taxpayer. *Arizona Eastern R. Co.* v. *Graham County,* 20 Ariz. 257, 179 Pac. 959; *Gibson Abstract Co.* v. *Cochise County,* 12 Ariz. 158, 100 Pac. 453; *Glendale Union High School Dist.* v. *Peoria School District No. 11, ante,* p. 151, 99 Pac. (2d) 482. It is contended, however, by plaintiff (a) that section 3132, Revised Code 1928, impliedly permits recovery under the circumstances set forth in the complaint, and (b) that these circumstances constitute an exception to the general rule, even under the common law. We will deal with these questions in their order.

Section 3132, *supra,* reads as follows:

"Refunding of taxes. When a tax has been set aside as invalid, or when money has been refunded to the taxpayer as double or erroneous assessments, or refunded to the purchaser of real estate erroneously sold, the proportion thereof which has been paid to the state treasurer, shall be refunded to the county; and on the next settlement thereafter, the county treasurer of such county shall be credited therewith by the state. treasurer.''

 It will be seen that in the section there is no express provision that taxes paid like those in question herein shall be refunded, but it is argued that it implies such refunding. We cannot agree with this contention. Our statute provides special and exclusive methods for the payment of taxes under protest, if the taxpayer believes that if for any reason they are illegal, and for proceedings to recover them. Sections 3065, 3090 and 3136, Rev. Code 1928. The action for recovery of such taxes was against the taxing unit to which the tax had been paid. If it were found they were illegally collected, it was that unit which was obliged to refund them, and the taxpayer was not required to bring an action against the state or another unit to which part of the taxes so illegally collected had been paid under some provision of law. *Maricopa County* v. *Hodgin,* 46 Ariz. 247, 50 Pac. (2d) 15, 101 A. L. R. 793. It was, therefore, but justice that the taxing unit which had received part of the illegal tax should reimburse the one which had repaid it in full. We think section 3132, *supra,* shows on its face it was meant to apply only to such a situation, and has nothing to do with the question of whether a refund should or should not be made to a taxpayer. It was not adopted for the benefit of the latter. His rights were settled and protected by other provisions of law; it was for the protection of the taxing unit which by such provisions had been compelled to make a refund.

 We consider next whether the matter falls
under exceptions to the general rule of the common
law. This general rule has been well stated by the
Supreme Court of California, in *San Diego Land &
Town Co.* v. *La Presa School Dist.*, 122 Cal. 98, 54 Pac.
528. The court quotes from Cooley on Taxation, page
809, as follows:

" 'Every man is supposed to know the law, and, if he
voluntarily makes a payment which the law would not
compel him to make, he cannot afterwards assign his
ignorance of the law as the reason why the state should
furnish him with remedies to recover it back. Espe-
cially is this the case when the officer receiving the
money, who is chargeable with no more knowledge of
the law than the party making payment, is not put on
his guard by any warning or protest, and the money
is paid over to the use of the public in apparent ac-
quiescence in the justice of the exaction. Mistake of
fact can scarcely exist in such a case except in connec-
tion with negligence, as the illegalities which render
such a demand a nullity must appear from the records,
and the taxpayer is just as much bound to inform him-
self what the records show, or do not show, as are the
public authorities. The rule of law is a rule of sound
policy also; it is a rule of quiet as well as of good
faith, and precludes the courts being occupied in un-
doing the arrangements of parties which they have
voluntarily made, and into which they have not been
drawn by fraud or accident, or by any excusable igno-
rance of their legal rights and liabilities.' ''—and then
continues: "Our Code defines mistake of fact to be
one 'not caused by the neglect of a legal duty on the
part of the person making the mistake.' Civ. Code,
§ 1577. It is the legal duty, we think, of the owner of
property to see that it is properly assessed; and ample
provision is made for correcting mistakes in the roll
or list. The manager of the company did not testify
that he paid the tax under mistake of fact, but that
when the tax was paid he believed the property was
inside the district. Conceding, however, that plain-
tiff made a mistake of fact in paying when it was not
liable, the mistake was caused by its own neglect of

duty, and, the payment being voluntary, the law will furnish no relief.''

This rule has been sustained by the Supreme Court of California consistently as a correct statement of the common law, and we agree with it.

Plaintiff has cited to us the Restatement of the Law of Restitution as sustaining its position, and urges that we have held we will follow the Restatement. We have said several times that we will do so unless we are committed to some rule other than that laid down by the Restatement, or unless it appears clearly to us that it does not correctly state the rule of the common law. The particular quotation which plaintiff claims upholds its position reads as follows:

''Sec. 19. A person who has paid money to another because of an erroneous belief induced by a mistake of fact that he was thereby performing in whole or in part a duty to the payee, other than a contract duty, is entitled to restitution of the amount so paid if such duty did not exist.

''. . .

''h. Public duties. Subject to the rules as to the immunity of the State from liability, the rule stated in this Section applies to a payment made because of a mistake of fact as to the existence of a public obligation, as where a person pays for the second time a tax due from him personally, having forgotten the initial payment, or makes payment of a fine in ignorance that his attorney has already paid. For the rules where a tax is paid under mistake of law or under duress, see secs. 45 and 75.'' Pages 86 and 92.

We think the section quoted and the illustration given do not apply to the facts of the present case. The latter limits the application of the rule to ''a mistake of facts as to the *existence* of a public obligation,'' giving two instances of where a public obligation has already been satisfied, and a person pays it a second time.

■ In the present case there can be no doubt that a public obligation to pay taxes on the improvements existed and that it had never been satisfied until it was paid by plaintiff. We think the rule laid down by the Supreme Court of California correctly states the common-law rule as applicable to circumstances like those involved in the present case, and that it is not in conflict with the Restatement. Plaintiff, therefore, was not entitled to recover as a matter of the common law.

The cases of *O'Malley* v. *Sims,* 51 Ariz. 155, 75 Pac. (2d) 50, 115 A. L. R. 634, and *Christofferson* v. *Chouteau County,* 105 Mont. 577, 74 Pac. (2d) 427, cited by counsel for plaintiff, were based on specific statutes which the courts in the respective cases held authorized the recovery of the money paid. The Arizona statute applicable in the O'Malley case certainly does not cover property taxes, but inheritance taxes only, and the statute governing in the Christofferson case is not found in our Code.

While the rule may seem a harsh one, it is thoroughly sustained by the decisions of this and of practically every court in the country.

The judgment is reversed and the case remanded with instructions to sustain the demurrer, and for further action according to law.

ROSS, C. J., and McALISTER, J., concur.