379 P.2d 904

**The STANDARD REGISTER COMPANY, a corporation, Appellant,**

**v.**

**STATE TAX COMMISSION of the State of Arizona, Appellee.**

**No. 7023.**

Supreme Court of Arizona.

En Banc.

March 20, 1963.

Evans, Kitchel & Jenckes, and Willard J. Kiser, Jr., Phoenix, for appellant.

Wade Church, former Atty. Gen., and Stanley Z. Goodfarb, Asst. Atty. Gen., for appellee.

JENNINGS, Justice.

By this action, Standard Register Company seeks to recover privilege taxes levied upon its business activities in this state and paid to the appellee under protest. The lower court rendered judgment in favor of

the Tax Commission, and the company has appealed.

The stipulated facts are these: The appellant company is an Ohio corporation which was not qualified to do business in this state as a foreign corporation during the period involved in this litigation. It did not, during this period, own any realty or personal property in this state, except demonstrating equipment of nominal value consigned to its agent, an independent contractor. It did not employ any persons who resided or worked within this state, and did not pay property taxes, registration fees, income tax or employer's contributions for unemployment compensation to the state, or any of its agencies or subdivisions.

The company's business activities, except insofar as it had no printing plants located within the state and did no printing or reproduction work within the state, were, according to the stipulation, identical to those activities carried on by job printers who did have printing plants within the State of Arizona. The total sales, during the audit period involved, made by the appellant and delivered by common carrier to customers located within the State of Arizona were approximately $328,000. The bulk of this figure represents sales of printed or reproduced business forms, some of which bore the customer's identification and other language requested by the customer, and some of which were stock forms printed by the company.

The Tax Commission levied a privilege tax of 2% of the gross income of the company under A.R.S. § 42–1312.[1] Appellant paid this tax under protest, contending that it should have been taxed at a rate of 1% of gross income under the provisions of A.R.S. § 42–1310(2) (h),[2] and A.R.S. § 42–1319(A).[3] Appellant argues, first, that the

---

1. "§ 42–1312.
   "A. The tax imposed by subsection A of § 42–1309 shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the business of selling any tangible personal property whatever at retail, * * *."

2. "§ 42–1310.
   "The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:
   *     *     *     *     *
   "2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:
   *     *     *     *     *
   "(h) Job printing, engraving, embossing and copying, advertising by billboards, direct mail, radio, television or by any means calculated to appeal to prospective purchasers. * * *"

3. "§ 42–1319.
   "A. Any person engaging in any of the following classified businesses who sells the product of such business at retail in this state shall make return of the gross proceeds of such sales and pay the tax at the rate and subject to the provisions imposed by § 42–1312:
   "Manufacturing, * * * processing or otherwise preparing for sale or com-

Tax Commission has misinterpreted these statutes by reading into them an unfounded distinction between job printers whose activities are carried on completely within the state and those job printers, who, like the appellant, conduct their printing and reproduction activities outside the state. Second, the appellant argues that if the interpretation given these statutes by the Tax Commission is the correct interpretation, they are unconstitutional under the commerce, due process and equal protection clauses of the Federal Constitution, and under §§ 4[4] and 13[5] of Article II of the Arizona Constitution, A.R.S.

The Tax Commission admits that, as it has interpreted and administered these statutes, job printers whose plants are located within this state pay a privilege tax of only 1% of gross income while the appellant has been assessed at 2% of gross income, but it argues that this differing treatment is based upon a reasonable classification. We are told that the state can only charge a privilege tax upon transactions which take place within the state. The local job printer conducts all of the several aspects of his business in this state, therefore §§ 42–1310 and 42–1319 apply and fix his tax rate at 1%. The appellant, however, does not do any job printing in this state because its presses are not here. Its activities in this state are limited to retail sales and therefore § 42–1312 governs and fixes the tax rate at 2%, according to the commission.

The discrimination charged by the appellant, however, arises not because different types of transactions are taxed at different rates, but because, in the case of the local job printer, payment of the 2% privilege tax on retail sales is excused while in the case of the appellant it is not. Clearly the appellant would have no ground of complaint if its local competitors were taxed on both their printing activities (at 1%) and their retail selling activities (at 2%). But A.R.S. § 42–1319 exempts local job printers (and, as interpreted by the commission, only local job printers) from the heavier of these taxes. The commission justifies this discrimination by saying that the local job printer pays many other taxes to this state which the appellant does not pay.

We need not reach the constitutional arguments raised by the appellant[6] as our

---

mercial use \* \* \* any product, article, substance or commodity *except those classified in paragraph 1 and subdivisions (b) through (i) of paragraph 2 of § 42.1310,* \* \* \*." (Emphasis added.)

4. "Section 4. No person shall be deprived of life, liberty, or property without due process of law.

5. "Section 13. No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

6. There appear to be many authorities which hold that tax discrimination is unconstitutional under both the state and

decision on the issue of statutory interpretation disposes of the case. We do not read in the controlling statutes the geographical distinction found there by the Tax Commission.

■ The commission places heavy stress upon this wording in A.R.S. § 42–1310:

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:

\*    \*    \*    \*    \*    \*

"2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person *engaging or continuing within this state in the following businesses:*

\*    \*    \*    \*    \*    \*

"(h) Job printing \* \* \*." (Emphasis added.)

According to the commission the words "within this state" are to be read into each of the subparagraphs to require that all of the activities incident to the operation of the businesses listed must be conducted within the state. To do so would create a manifold redundancy because in five of the nine subparagraphs of this section, where the types of business to which this tax rate applies are listed, there are already specific requirements that the business activities be conducted within the state. Thus, subparagraph (g) reads:

"(g) Publication of newspapers, magazines or other periodicals and publications, *when published within the state,* including the gross income derived from subscriptions, advertising and notices." (Emphasis added.)

No restriction to local operation appears in the next subparagraph (h), with which we are concerned, and we take this omission and clear change of language to mean that none was intended. Cf. In re Kesl's Estate, 117 Mont. 377, 161 P.2d 641 (1945).

It seems plain to us that the business a person conducts does not change in nature because he steps across a state line....The appellant's business is no less a job printing business when it is conducted in Arizona than when it is conducted in Ohio or anywhere its printing plants are located. The same activities involving solicitation of orders, custom printing, and delivery of finished goods characterize both business transacted in Arizona and that transacted in Ohio. Indeed, the definitions adopted

Federal Constitutions, where it is based upon location, thus placing a heavier tax burden upon businesses with interstate operations than is placed upon local businesses, e. g. State v. Williams, 53 Ariz.

319, 89 P.2d 34 (1939) ; Memphis Steam Laundry Cleaner v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436 (1952); Columbia Steel Co. v. State, 30 Wash.2d 658, 192 P.2d 976 (1948).

by the Tax Commission in implementing these statutes fail to support the geographical distinction which the commission makes here.[7]

■ We therefore hold that A.R.S. § 42–1310(2) (h) and A.R.S. § 42–1319 apply to all persons engaging, within this state, in the business of job printing without regard to the location of the printing or reproduction equipment used. It follows that the Tax Commission improperly assessed the appellant's taxes under A.R.S. § 42–1312, and that the trial court erred in rendering judgment for the commission.

The judgment of the lower court is reversed with directions to enter judgment for the appellant.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

---

**7.** "2.10 *Job Printing and Advertising*: Gross income from job printing, engraving, embossing, copying and advertising by billboards, direct mail, radio, television or any other means is taxed 1%.

".10.1 *Articles Included.* The printing or other reproduction of books, periodicals, magazines, or other publications, or handbills, circulars, or other advertising mediums, of letterheads, billheads, envelopes, cards, or other business or professional stationery, and of any other articles copied or reproduced by printers, engravers, embossers, or others engaged in similar businesses, is included under this classification.

".10.2 *Means Included.* Any means of copying or reproducing from originals, 'copy', or plates, blocks, impressions, type, stencils, or mats, such as printing, offset printing, engraving, embossing, mimeographing, multigraphing, duplicating, lithographing, photostating, and multilithing, is included.

".10.3 *'Printer' Defined.* For the purposes of this classification, a job printer is defined as any person who copies or reproduces any article included within such classification, by any means included within such classification." Regulations under Arizona Administrative Procedure Act, Title 41, Art. II (1961).