**236 P.2d 461**

**STATE ex rel. LANE, Superintendent of Motor Vehicle Division of Arizona State Highway Department, v. SUPERIOR COURT IN AND FOR MARICOPA COUNTY et al.**

No. 5527.

Supreme Court of Arizona.

Oct. 8, 1951.

Fred O. Wilson, Atty. Gen., Phil J. Munch and Earl Anderson, Asst. Atty. Gen., of Phoenix, for petitioner.

Frank W. Beer and Hess Seaman, of Phoenix, for respondent.

DE CONCINI, Justice.

This is an original proceeding for a writ of prohibition brought by petitioner C. L. Lane as Superintendent of the Motor Vehicle Division of the Arizona State Highway Department against respondent, the Honorable Fred C. Struckmeyer, Jr., Judge of the Superior Court of Maricopa County. Petitioner served on five alleged motor carriers, hereinafter referred to as "carriers", Reid Smith, A. G. Weaver, Ernest Garrison, W. L. Wahl, and Max W. Bronson, a "Notice to appear and be heard in the matter of the assessment of motor carrier tax" pursuant to sections 66–518 and 66–520, A.C.A. 1939, tentatively assessing to each "carrier" certain sums allegedly due the State of Arizona under those sections together with the penalties thereon. Section 66–518, supra, provides in part: "66.518. *License tax—Determining gross receipts.*—In addition to all other taxes and fees every common motor carrier of property and every contract motor carrier of property shall pay to the state, on or before the fifteenth day of each month, a license tax of two and one-half (2½) per cent of the gross receipts from his operations within this state for the next preceding calendar month, as such carrier, * * *." Section 66–520, supra, provides for a twenty-five per cent penalty to be added to any tax not paid on or before the day prescribed for the payment thereof, and further: "* * * * Upon the failure of any motor carrier to pay said license tax, the superintendent shall inform himself as best he may, and fix the amount of such license tax due the state from such motor carrier for such calendar month, and such tax, so fixed by him shall be the tax due to the state from such motor carrier; * * *." The notice complied with the statute in that it set a date some three weeks in advance at which time the alleged carriers could appear before the superintendent should they wish to be heard in the matter of such assessment.

Before the date set for the hearing, the "carriers" filed a suit in the superior court of Maricopa county seeking a writ of prohibition against petitioner herein, to enjoin him from proceeding with said hearing. Petitioner answered and alleged that respondent did not have jurisdiction over the subject matter of the action. Respondent, the trial judge below, overruled the plea to the jurisdiction, issued an al-

ternative writ of prohibition against petitioner's proceeding with the hearing, and announced that he would try the cause on the merits of the issues presented by the pleadings. Petitioner now seeks to have this court prohibit respondent from trying the case on its merits.

■ It is the contention of the petitioner that under the laws of this jurisdiction and particularly under section 66–520, supra, the carriers are precluded from testing the validity of petitioner's proposed assessment against them by the method which they have employed. The pertinent portion of sec. 66–520, supra, provides: "* * * No motor carrier upon whom a tax is imposed under the provisions of this act shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax, together with all penalties thereon, shall have first been paid to the superintendent. No injunction shall issue from any court against the superintendent to prevent or enjoin the collection of such license tax. After payment, an action may be maintained to recover any tax illegally collected. * * *" The writ of prohibition issued by respondent is in the nature of an injunction and, therefore, petitioner claims that it violates sec. 66–520, supra. On the other hand the "carriers" contend they were not contract carriers subject to tax but that they were mere lessors of the trucks in question, and that section 66–520, supra, has no application to them. Whether the "carriers" were common or contract carriers and thus taxable under the statute is the question to be determined in the last analysis; however, this court is *not now faced* with that question. The issue to be resolved here is the jurisdiction of the respondent court in prohibiting petitioner from proceeding under the statute. If respondent is without such requisite jurisdiction then prohibition will lie against it. Counsel for respondent set up four points for our consideration, however, we deem it unnecessary to consider all of them as a determination of the issue as heretofore set out will effect a complete disposition of the case.

■■ Respondent claims that it is within the jurisdiction of the superior court to judicially determine whether said "carriers" were or were not common or contract carriers and thus subject to the tax. Taking this statement out of context, it might well be true, for it seems almost obvious that such would be a proper subject for judicial determination by any court. Under the facts of the instant case, however, respondent's claim is groundless. We are here faced with a question of jurisdiction not in general, but under special statutes. Not only section 66–520, supra, governs, but also section 73–841, A.C.A. 1939. That section is part of our tax code and provides: "73–841. *Contest of taxes —Injunction—Recovery and refunds.* No person upon whom a tax has been imposed under any law relating to taxation shall

be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount paid, the excess shall be refunded in the manner hereinbefore provided."

Those sections clearly indicate the well-established policy of this state to prevent the validity of a tax from being tested by injunctive means. That policy is based on the realization that to so permit injunction would be, at least temporarily, to emasculate all tax measures. The legislature has seen fit to prescribe the method by which the validity of tax measures may be tested, i. e.: By paying the tax, and bringing suit to recover it. No other means have been provided. This does not, however, give those whose duty it is to assess the taxes completely unfettered power. If a taxing official were to arbitrarily assess a tax against an individual who was patently not liable for the payment thereof, certainly no law would oblige that individual to pay the tax and then sue to recover it. In that case an injunction would lie, because the official had

acted without semblance of authority. Such was the case in Nelssen v. Electrical District No. 4, etc., 60 Ariz. 145, 132 P.2d 632. In that case the plaintiff brought an action against an electrical district to enjoin it from further levying taxes against his property. After finding that the plaintiff's land was never a legal part of the district this court granted an injunction in plaintiff's favor, and on rehearing, reported in 60 Ariz. 175, 133 P.2d 1013, the court adhered to its original opinion and added: "* * * While the language of section 73–841 is very broad and comprehensive, it cannot well be construed as requiring a property owner to pay a claim for taxes, when there is no semblance of authority for its imposition, before he may defend against it."

In Santa Fe Trail Transp. Co. v. Bowles, 62 Ariz. 177, 156 P.2d 722, 723, our court quoted the Nelssen case, supra, with approval and said: "If there is no semblance of authority for the imposition of the tax, then injunction will lie. If there is some semblance of authority for the imposition of such tax plaintiff's remedy is to pay the tax under protest, then test its validity by suing for recovery of the amount so paid under said Section 73–841."

It must be conceded that the case of Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 665, 163 A.L.R. 261, is somewhat inconsistent with those cases for in that case the Tax Commission was enjoined from assessing or

392

levying a tax against the plaintiff even though the commission was acting with semblance of authority. This court, in a divided opinion, held that an injunction was proper because payment of the tax under protest and suit for recovery would result in a multiplicity of suits, making the legal remedy inadequate. We make no denial that in the instant case it would be a great deal more expeditious as far as the "carriers" are concerned to allow prohibition to issue against petitioner. Assuredly the "carriers" are put to greater task in paying the tax and suing to recover same in what may prove to be a succession of suits. Be that as it may, section 66–520 is explicit in providing that, "* * * No injunction shall issue * * *" supra, and the fact that the burden of the "carriers" is apt to become heavier under this section, does not permit of its violation. The weight of "carriers" burden in this case becomes insignificant when thrown upon the scales of public benefit as opposed to the great harm that would result if injunction were allowed to stay the payment of taxes to the sovereign state. It should be noted in the Crane case, supra, the court stated: "In so holding, we do not mean to depart from the statements made in Santa Fe Trail Transp. Co. v. Bowles, [62] Ariz. [177], 156 P.2d 722. * * *" The Crane case notwithstanding, we hold the law to be as laid down in the Nelssen and Bowles cases, supra, that injunction will not lie to restrain the assessment of taxes imposed by law so long as the tax official acts with semblance of authority. Even without the sanction of those cases, section 66–520 is sufficiently clear in prohibiting taxpayers the remedy which they seek to employ.

The alternative writ of prohibition is made peremptory.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.