# Supreme Court of the Navajo Nation

---

**Blaze Construction, Inc., Appellant,**
v.
**Navajo Tax Commission and**
**Office of the Executive Director,**
**Navajo Tax Commission, Appellees.**
**Decided December 20, 1999**

---

## OPINION

Before AUSTIN, Acting Chief Justice, and HOLGATE, Associate Justice by designation.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Luralene Tapahe, Esq., Window Rock, Navajo Nation (Arizona), for the Appellees.

Opinion delivered by AUSTIN, Associate Justice.

The Navajo Tax Commission and Office of the Executive Director ("Commission") move to dismiss this appeal, arguing that Blaze Construction, Inc. ("Blaze") failed to fulfill the statutory requirement that it pay its tax liability prior to taking an appeal to this Court. Blaze responds that the statutory requirement violates its due process rights and contravenes the parties' Tax Payment Agreement ("Agreement"). After review, we find that the statutory requirement does not violate due process rights and does not contravene the parties' Agreement. Because Blaze has not satisfied its statutory obligation, we grant the motion to dismiss.

## I. FACTS

On July 20, 1989, the Commission assessed upon Blaze certain business activity taxes, penalties and interest totaling $1,122,401. See Agreement, para. II, C-F at page 1. Blaze filed an administrative appeal of the assessment. Meanwhile, the parties entered into the Agreement whereby the Commission resolved to stay collection activities so long as Blaze paid its tax liability in full pursuant to a specified payment schedule. See Agreement, para. VI, A at page 3.

The Agreement also contained the following provisions:

A. In the event that a final decision is rendered in [an administrative] Appeal and Blaze and NTC-OED file a notice that they will not appeal from this decision or the time for filing an appeal passes without any appeal being filed, then the provisions [of the Agreement calling for a stay of collection activities] will no longer apply.

B. If the final decision [in an administrative appeal] results in Blaze owing more money to the NTC-OED than has been paid by Blaze to the NTC-OED at that time, then unless the parties make other arrangements which are reduced to writing within thirty (30) days of the date on which the decision becomes final and unappealable, the NTC-OED shall be free to exercise any collection right existing under Navajo law to collect the balance due it from Blaze.

Agreement, para. VII at page 4.

On February 3, 1997, after a hearing and review of Blaze's administrative appeal, the Tax Commission upheld the prior assessment and ordered Blaze to pay additional monies to the Navajo Nation. Specifically, Blaze was ordered to pay the amount originally assessed in taxes, penalties and interest ($1,122,401), plus additional interest until the date of final payment. Also, Blaze was ordered to pay $1,136.86 for a transcript of the administrative hearing.

Blaze made partial payments on its liability commencing in March 1992. Those payments totaled $1,122,401. The Tax Commission ordered that Blaze's payments were to be applied first to penalties, then to interest, and then to the underlying tax liability. This left Blaze with an unpaid balance of $581,298.44, plus interest until the date of final payment, and the cost of the transcript. The parties agree that Blaze has not paid the balance due.

Blaze appealed the final administrative decision to this Court. Appeals of final Tax Commission decisions to this Court are permitted only under certain circumstances, as provided for by 24 N.N.C. § 434(B) (1995),[1] which states as follows:

Appeals from final actions of the [Tax] Commission ... shall be made only to the Supreme Court of the Navajo Nation ... but in no case may an appeal of an assessment be taken to the Supreme Court until payment of the taxes assessed has first been made. (emphasis added).

The Commission moved to dismiss the appeal claiming that Blaze failed to satisfy the statutory, "pay first, litigate later" requirement of 24 N.N.C. § 434(B), and thus, this Court has no jurisdiction over the appeal. Blaze responds by arguing that the statutory "pay first, litigate later" requirement violates its due process rights and contravenes the parties Agreement.

---

1. The Commission mistakenly refers to 24 N.N.C. § 131(B), which deals with the Hotel Occupancy Tax. The correct provision to cite is 24 N.N.C. § 434(B), as that section establishes the "pay first, litigate later" requirement for appeals from Business Activity Tax assessments.

## II. Discussion

### A. Due Process

Title 24 N.N.C. § 434(B) requires that taxpayers pay their tax liabilities prior to appealing final decisions of the Tax Commission to the Supreme Court. The validity of such a "pay first, litigate later" requirement is well established in other jurisdictions and we apply it here. See, e.g., *McKesson Corp. v. Division of Alc. Bevs. and. Tobacco*, 496 U.S. 18, 22, 36-40 (1990); *Flora v. United States*, 357 U.S. 63, 75-76 (1958), *aff'd on reh'g*, 362 U.S. 145, 146 (1960); *Bull HN Info. Systems v. Dep't of Revenue*, 916 P.2d 1109 (Ariz. App. Div. 1 1995); *R & G Outfitters, Inc. v. Bouchard*, 475 N.Y.S.2d 549, 551 (A.D. 3d Dep't 1984); *Hamil v. Walker*, 604 P.2d 377, 379 (Okla. 1979); *see generally*, Richard M. Lipton, Note, *Procedural Due Process in Tax Collection: An Opportunity for a Prompt Postdeprivation Hearing*, 44 U. CHI. L. REV. 594 (1977).

In *McKesson v. Division of Alcoholic Beverages and Tobacco*, the United States Supreme Court analyzed Florida's constitutional duty to provide relief to a taxpayer for its payment of an unlawful tax. See 496 U.S. at 36. A unanimous Court stated:

> Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause. The State may choose to provide a form of predeprivation process, for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State. However, whereas [w]e have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant interest, *it is well established that a State need not provide predeprivation process for the exaction of taxes*.

*Id.* at 36-37 (quotations and citation omitted) (second emphasis added). The Supreme Court recognized that meaningful, postdeprivation process is sufficient to satisfy the Due Process Clause in the context of tax exaction. *See id.* at 39. That is, if a state chooses to restrict taxpayer relief to postdeprivation process, the procedures must provide the taxpayer with

> not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a clear and certain remedy for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.

*Id.* (quotations and citation omitted).

The Court reasoned that

> [a]llowing taxpayers to litigate their tax liabilities prior to payment might threaten a government's financial security, both by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult,

*Id.* at 37. "States have a legitimate interest in sound fiscal planning and ... this interest is sufficiently weighty to allow States to withhold predeprivation relief for allegedly unlawful tax assessments, providing postdeprivation relief only." *Id.* at 50. Ultimately, the Court maintained that the State's interest in protecting its fiscal security must be considered when determining the contours of due process. *See id.* at 51 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976)).

In the present matter, the statutory "pay first, litigate later" requirement satisfies Blaze's due process rights. Blaze was on notice of its obligation to pay the taxes, penalties and interest that were eventually assessed against it. See 24 N.N.C. §§ 402, 405, 406-408, 415, 416-417. Further, we note that although due process does not require the Navajo Nation to provide predeprivation process, taxpayers are afforded an informal conference and a full hearing before the Tax Commission prior to paying their tax liabilities. As such Blaze was permitted to have an administrative hearing and review of its tax assessment before it paid its tax liability in full.

Navajo Nation law satisfies the *McKesson* standard, which requires meaningful, postdeprivation relief. First, taxpayers' right to "a fair opportunity to challenge the accuracy and legal validity of their tax obligation" is provided for and codified at 24 N.N.C. § 434(B) (permitting appeals from the Tax Commission to the Supreme Court after payment of taxes has been made). Second, taxpayers' right to a clear and certain remedy is provided for and codified at 24 N.N.C. § 433, which sets forth procedures for the government to refund tax overpayments, and 24 N.N.C. § 442, which requires the Navajo Nation to maintain a Tax Administration Suspense Fund in order to finance payments to wronged taxpayers.

The Navajo Nation's "pay first, litigate later" requirement serves the important public policy of protecting the financial viability of our sovereign government. The Navajo Nation's Business Activity Tax helps to pay for essential government operations and services for Navajos and non-Navajos on the Navajo Nation. As the United States Supreme Court has recognized, "The power to tax is an essential attribute of Indian sovereignty because it is a necessary instrument of self-government and territorial management." *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 137 (1982). "This power enables a tribal government to raise revenues for its essential services." *Id.* The crucial power to tax and the resultant benefits of tax revenues would be jeopardized if we were to allow taxpayers to litigate their liabilities prior to making full payment.

We are mindful that the "pay first, litigate later" requirement may work a

hardship upon indigent taxpayers. However, legislating a solution to this potential problem is a matter for the Navajo Nation Council rather than this Court. Further, we note that Blaze's claimed indigence is not proven and is not a factor in our decision.

For the reasons explained above, we conclude that the statutory "pay first, litigate later" requirement of 24 N.N.C. § 434(B) does not violate Blaze's due process rights.

### B. Tax Payment Agreement

The parties' Agreement provides that the Commission would stay collection activities so long as (1) Blaze paid its tax liability in full pursuant to a specified payment schedule and (2) either party appealed from a final decision of Blaze's administrative appeal. See Agreement, para. VI at page 3; para. VII, A at page 4. However, the Agreement also states that, if the final decision of an administrative appeal results in Blaze owing more money to the Navajo Nation than had been paid by Blaze at the time, then the Commission may exercise its rights to collect the balance due. See Agreement, para. VII, B at page 4.

We interpret a contract by reading it as a whole and in its entirety. Reading the parties' Agreement as a whole, we conclude that application of the "pay first, litigate later" requirement does not contravene the language or intent of the Agreement. The Agreement expressly states that the Commission may exercise its right to collect money owed to the Navajo Nation if an administrative appeal results in Blaze owing the Navajo Nation additional funds. See Agreement, para. VII, B at page 4. Here, the Tax Commission's final judgment was that Blaze owed more money than it had paid. Accordingly, pursuant to the express language of the Agreement, the Commission may exercise its collection rights. In the context of the present action, the Commission's collection rights include moving to dismiss Blaze's appeal for failure to satisfy the statutory "pay first, litigate later" requirement. For these reasons, we conclude that enforcement of 24 N.N.C. § 434(B) does not contravene the parties' Agreement.

## III. Conclusion

We hold that the "pay first, litigate later" requirement of 24 N.N.C. § 434(B) does not violate Blaze's due process rights and does not contravene the terms of the parties' Agreement. The requirement applies to and is enforceable in this matter. Because Blaze has not satisfied the statutory requirement, we grant the Commission's motion to dismiss the notice of appeal.